UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-22811-CIV-MORENO/TORRES

SEAY TOWING, INCORPORATED,
a Florida corporation,

       Plaintiff,

vs.

CITY OF NORTH MIAMI BEACH,
a Florida municipality,

       Defendant.

_____/

REPORT AND RECOMMENDATION ON PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

This matter is before the Court on Plaintiff Seay Towing, Incorporated's ("Plaintiff") Emergency Motion for Preliminary Injunction filed on September 18, 2009. [**D.E. 3**].[1]  The Honorable Federico A. Moreno referred this motion to the undersigned Magistrate Judge for submission of a Report and Recommendation.  [D.E. 5].  After considering the motion and related filings, and the entire record in this case, the Court recommends that Plaintiff's motion for a preliminary injunction be denied, for the reasons set forth below.

---

[1]     We struck the emergency designation of the motion on September 24, 2009.  [D.E. 6].

## I.   BACKGROUND[2]

Plaintiff operates a towing business and, until October 1, 2009, held a valid license to do business (also known as a Business Tax Receipt) in the Defendant City of North Miami Beach, Florida ("City").  Plaintiff operated the towing business continuously in the same location for almost forty (40) years.  On July 21, 2009, the City Council of the City of North Miami Beach voted to terminate Plaintiff's license effective October 1, 2009.

Plaintiff is challenging the City's action.  On September 18, 2009, Plaintiff filed this lawsuit against the City pursuant to 42 U.S.C. § 1983 for monetary and injunctive relief.  [D.E. 1[3]].  Plaintiff claims that the City revoked its license in which it has a protected property interest without proper notice and without a hearing, in violation of its Due Process rights and in violation of the procedures set forth in the City's own municipal code.  Plaintiff alleges that the City concentrated the functions of "complainant, jury, judge, and executioner in one proceeding" and thereby failed to comport with the fundamental notion of fairness implicit in due process.  Plaintiff also alleges that the City violated its equal protection rights by engaging in disparate treatment of similar businesses and properties, i.e., by failing to enforce its code uniformly and instead engaging in a pattern of arbitrary and capricious enforcement

---

[2]     Because there was little dispute over the relevant facts, there was no need for an evidentiary hearing.

[3]     Plaintiff has moved to amend its complaint [D.E. 13 at 4-5] but the motion is opposed [D.E. 15 at 4] and has not yet been ruled on.

targeted at Plaintiff for unlawful purposes. In addition to monetary damages, Plaintiff requests injunctive relief in the form of reinstatement of its business license.

The parties have been involved in a long-standing dispute regarding this property that dates back several years. In brief summary, in December 2004, Plaintiff was notified by the City that the placement of two modular units on the property was a code violation and that it was doing work on a warehouse without a permit. [D.E. 9-1]. In June 2005, the City passed Resolution No. R2005-35 which allowed Plaintiff to construct an office building on the site subject to certain conditions. [D.E. 9-2]. In the fall of 2005, Plaintiff sought to move the business to another section of the property, a move the City claimed required Plaintiff to go through a formal site plan review process. [D.E. 9-3, 9-4]. Plaintiff did not apply for site plan review, and the City did not renew Plaintiff's 2007-2008 business license.

The non-renewal of its license led Plaintiff to file suit in state court for injunctive and other relief on October 5, 2007. *See Seay Towing, Inc. v. City of North Miami Beach*, No. 07-33035 (CA 08) (Fla. Cir. Ct.). Shortly after the lawsuit was filed, the parties reached a partial settlement agreement that was approved by the circuit court judge, who expressly retained jurisdiction to enforce the terms of the agreement. [D.E. 9-6]. The parties agreed that the existing warehouse would be renovated and the entire site improved. [D.E. 9-7 at 1]. The City agreed among other things to issue a temporary business license and temporary certificate of occupancy for the existing warehouse so that Plaintiff could meet its obligations under the agreement. [*Id*. at 2].

Since then, Plaintiff completed the repair work for the warehouse. However, the parties disagree about whether Plaintiff satisfied other terms of the settlement agreement. The City contends it gave Plaintiff numerous extensions of time in which to bring the property up to code. The City also claims it released thousands of dollars of liens based on code violations on Plaintiff's property and refrained from issuing further code violations, so that Plaintiff could obtain financing to complete the site construction, repairs, and renovations pursuant to the settlement agreement. [D.E. 9-9].

According to the City, it eventually determined that Plaintiff had no intention of complying with the settlement agreement, meaning the property would not be brought up to code. Accordingly, the City Attorney advised Plaintiff by letter dated June 30, 2009 that the issue of revoking Plaintiff's license (effective October 1, 2009) would be raised at the City Council meeting on July 21, 2009. [D.E. 9-10]. More specifically, the City stated in the letter that Plaintiff had not complied with the terms of the settlement agreement and unless the property was brought up to code, the City would not renew the license. The letter listed modifications that would be required before the City would consider the property code-compliant. A follow-up letter dated July 15, 2009 listed the specific sections of the city code that required modifications to Plaintiff's property. [D.E. 9-12].

Plaintiff, on the other hand, claims the City pressured it to cede a portion of its property to the City. When Plaintiff refused, the City sent a team of inspectors to the property to find any possible code violation on which to based revocation of its business

license. [*See* D.E. 3 at 26-28]. Although no code violations were then outstanding, the City "scrambled" to manufacture violations on which to base the revocation.

The City Council met on July 21, 2009. Both the City Attorney and Plaintiff's counsel made presentations to the Council, and Plaintiff's counsel submitted exhibits. The Council discussed the matter, questioned the attorneys, then voted 6-1 to revoke Plaintiff's license.

Plaintiff appealed the Council's decision to the state court. On or about August 26, 2009, Plaintiff filed an emergency motion for temporary injunction in the prior case (No. 07-33035), raising among other things a procedural due process argument. [D.E. 9-14 at 2-3]. Circuit Court Judge Lester Langer heard argument on the motion, then denied it on September 15, 2009. [D.E. 9-16]. Plaintiff has appealed this Order to the Third District Court of Appeal; the initial brief is due later this month. *See Seay Towing, Inc. v. City of North Miami Beach*, No. 3D09-2840 (Fla. 3d DCA).

A few weeks later (and after reassignment of the case to a different judge), on September 30, 2009, Circuit Court Judge Pedro P. Echarte denied Plaintiff's motion to require the City to set a motion and hearing before the state court to request revocation of Plaintiff's license. [D.E. 9-17]. On the same date, Circuit Court Judge Jerald Bagley denied Plaintiff's emergency motion filed in the appellate division of the circuit court to require the City to reinstate Plaintiff's license pending the outcome of its petition for writ of certiorari and request for order to show cause. [D.E. 9-19].

In the midst of the aforementioned motion practice in the state court proceeding, on September 18, 2009, Plaintiff filed suit in this Court.

## II.   ANALYSIS

In moving for a preliminary injunction, Plaintiff argues that the City's decision to revoke Plaintiff's license violated its due process rights because the City acted "without proper notice or an opportunity for a hearing and not even a single issued Code Violation on the property." [D.E. 3 at 6].  Plaintiff contends that the City failed to follow its own procedural requirements for code violations, to wit:  the City Code Inspector was required to issue a Notice of Violation to Plaintiff, which if disputed could have been raised at a Code Enforcement hearing.  The City's revocation of its license, Plaintiff states, was based solely on misrepresentations by the City Attorney that code violations on the property existed when, in fact, none existed on July 21, 2009, the date of the Council vote.  In fact, Plaintiff contends that the City knew or should have known that the provisions on which the alleged code violations were based applied to new construction and not to Plaintiff's property.  Thus, Plaintiff suggests, the City Council proceeding on July 21, 2009 was fundamentally unfair in that the City served as the "complainant, enforcer, judge, jury, and executioner" in the same proceeding.  It is Plaintiff's position that the City acted in bad faith when it revoked Plaintiff's license; its true intent was to force Plaintiff out of business and forcibly take the land it had unsuccessfully attempted to obtain in prior years.[4]

---

[4]      Plaintiff also alleges that the City violated its equal protection rights. However, the motion for preliminary injunction contains no analysis of the equal protection claim.  Plaintiff merely states that the City "has engaged in a pattern of non-enforcement against the towing businesses and other neighboring businesses near the Plaintiff." [D.E. 3 at 7].  Plaintiff offers no factual support whatsoever for this conclusory statement.  Nor does Plaintiff articulate why there is a substantial likelihood it would succeed on the merits of an equal protection claim.  Plaintiff's sole focus here is the due process violation.  Accordingly, our analysis will likewise focus

### A.    *Standard of Review*

To obtain a preliminary injunction, a party must demonstrate the following: "(1) a substantial likelihood of success on the merits of the underlying case; (2) the movant will suffer irreparable harm in the absence of an injunction; (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest." *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246-47 (11th Cir. 2002); *see also Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to the four requisites." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) ("[b]ecause a preliminary injunction is 'an extraordinary and drastic remedy,' its grant is the exception rather than the rule, and plaintiff must clearly carry the burden of persuasion."). However, "[i]f the movant is unable to establish a likelihood of success on the merits, a court need not consider the remaining conditions prerequisite to injunctive relief." *1-800 Contacts*, 299 F.3d at 1247 (citing *Pittman v. Cole*, 267 F.3d 1269, 1292 (11th Cir. 2001)).

The goal of a preliminary injunction is to prevent irreparable harm and to "preserve the district court's power to render a meaningful decision after a trial on the merits." *Canal Auth. of the State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir.

---

solely on the due process issue.

1974).  "[T]he most compelling reason in favor of [granting a preliminary injunction] is the need to prevent the judicial process from being rendered futile by defendant's action or refusal to act."  *Id.* at 573; *see also All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989) ("Preliminary injunctions are issued when drastic relief is necessary to preserve the *status quo*.").

### B.    *Substantial Likelihood of Success on the Merits*

The essence of Plaintiff's claim here is that the City deprived it of a protected property interest without providing proper notice of the alleged code violations or a proper code enforcement hearing.  The focus is on the *process* by which Plaintiff was deprived of its property interest.  This implicates procedural as opposed to substantive due process concerns.

"[T]he Constitution requires that the state provide fair procedures and an impartial decisionmaker before infringing on a person's life, liberty, or property."  *McKinney v. Pate*, 20 F.3d 1550, 1561 (11th Cir. 1994) (*en banc*).  The fundamental requirement of due process is an opportunity to be heard at a meaningful time and in a meaningful manner.  *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976); *see also Greenbriar Village, L.L.C. v. Mountain Brook, City*, 345 F.3d 1258, 1264 (11th Cir. 2003).  "Procedural due process" is merely a "guarantee of fair procedure."  *Amsden v. Moran*, 904 F.2d 748, 753 (1st Cir. 1990) (quoting *Zinermon v. Burch*, 494 U.S. 113 (1990)).

To establish a procedural due process claim, a plaintiff must show: "(1) a deprivation of a constitutionally-protected liberty or property interest;[5] 2) state action; and (3) constitutionally inadequate process." *Artistic Entm't, Inc. v. City of Warner Robbins*, 134 Fed.Appx. 306, 309 (11th Cir. 2005) (internal citations omitted). Even if a plaintiff can show a procedural deprivation, though, there is no procedural due process violation "unless the state 'refuses to make available a means to remedy the deprivation.'" *Id.* (quoting *McKinney*, 20 F.3d at 1563)). The process a state provides is not only that employed by the governmental entity whose action is in question, but it also includes the remedial process state courts would provide if asked. *Horton v. Bd. of County Comm'rs of Flagler County*, 202 F.3d 1297, 1300 (11th Cir. 2000) (explaining that in its prior decision in *McKinney*, the plaintiff had complained of a biased decisionmaker at the board level, "but under Florida law an adequate remedy for that could be obtained in the state courts. So, McKinney had an opportunity for procedural due process and that is all the Fourteenth Amendment requires."). The availability of judicial review "is an especially salient consideration" when a permit or license has been denied or revoked by state or local authorities in alleged derogation of procedural due process. *Amsden*, 904 F.2d at 755.

Our focus here is on the manner in which the City acted, the "how and when" it revoked Plaintiff's license. *Id.* at 753. "Whether the deprivation . . . was itself erroneous is beside the procedural due process point." *Id.* Thus, the procedural due process inquiry examines "how and when" the government acted as opposed to asking

---

[5]    We will assume (and it has not been contested by the City) that Plaintiff has a protectible property interest in its long-standing business license.

"what" the government did, which is the subject of a substantive due process inquiry. *Id.*

The crux of Plaintiff's argument is that it did not receive proper notice of alleged code violations. Plaintiff points out that it had not been cited for any code violation as of July 21, 2009, the date the City Council revoked its license. While Plaintiff may not have been formally cited for violating the City code, it knew the City had long believed the subject property was not up to code. These parties have been discussing various improvements and other changes to the property since at least 2005, and the City had long sought to compel Plaintiff to bring the subject property up to code. Indeed, Plaintiff's alleged lack of code compliance led to the City's nonrenewal of Plaintiff's 2007-2008 business license which resulted in the 2007 state court case that is still pending. Plaintiff's compliance (or non-compliance) with the terms of the settlement agreement had been the subject of on-going discussion between the parties for the past few years.

In any event, the City *did* provide notice of the specific provisions of the City code that were relevant to consideration of Plaintiff's license and would be discussed at the July 21, 2009 Council meeting. Although the June 30, 2009 letter did not specify which code provisions had allegedly been violated, the July 15, 2009 letter did.

The City also provided Plaintiff an adequate opportunity to be heard at a meaningful time. At the July 21, 2009 Council meeting, Plaintiff's attorney was given ample opportunity to thoroughly discuss: the history of the "dispute" between his client and the City; the City's interest in taking a portion of Plaintiff's property for

municipal purposes; the 2007 lawsuit and resultant settlement agreement; counsel's

present claim that the settlement agreement was "unenforceable" because it required

Plaintiff to give land to the City for nothing[6]; the efforts that Plaintiff *had* made to

bring the property into code compliance; the fact that no code violations for the

property had been issued; that the code provisions identified in the City's July 15, 2009

letter did not apply to Plaintiff's property but rather to new construction; and finally,

to argue that the City should not revoke the license.  Plaintiff's counsel concluded his

presentation on the following note:

> Seay Towing doesn't want to continue the litigation.  But it will
> continue because it is a violation of a multitude of their due process and
> constitutional rights.  *And having a hearing here before you, although it
> satisfies a procedural due process*, it's really not just enough.
>
> So what am I asking for?  Frankly, I'm asking, in layman's
> language, to leave them alone.  Leave them alone.  Enough is enough.
> There's nothing left to be done on this lot.  There's nothing left to be done.
> Let's all go our separate ways.  Leave us alone.  The agreement is done.
> That's it.

[D.E. 9-13 at 8, pp. 30-31 (emphasis supplied)].

------

[6]     Plaintiff has complained that the City at different times tried to take its
property without compensation. The argument presented to the City Council about the
settlement agreement being unenforceable relates to Paragraph 18 of Resolution No.
R2005-35.  This section provides that Plaintiff

> shall agree to donate a portion of the property at the north-west corner
> of the parcel for the construction of a cul-de-sac, if, at any time in the
> future, the City determines that the use of the existing twenty foot
> easement as a right-of-way is desirable, and that said cul-de-sac would
> contribute to the safe and efficient use of the roadway.  The specific
> location and size of said dedicated land shall be as determined by the
> City.

[D.E. 9-2 at 4-5, ¶ 18].  The enforceability of the settlement agreement is not before us.

The matter was then discussed by the Council members, questions were asked of the City Attorney and Plaintiff's attorney, then the Council voted.  Six (6) Council members voted for revocation and one (1) voted against revocation.  [*Id.* at 14, pp. 55-56].

It is clear from this record that Plaintiff had notice of the specific provisions of the code that the City contended Plaintiff had not complied with.  It is equally clear that Plaintiff's counsel had ample opportunity to present his client's case to the Council, explain why the property did not violate specific provisions of the code, and argue that the license should not be revoked.  The Council's decision was made after Plaintiff had notice of the issue and an opportunity to be heard.  Finally, Plaintiff challenged the Council's decision in state court.  The appeal of the circuit court decision is still pending.

On these facts, we find that Plaintiff's procedural due process rights were not violated.  The state has provided a remedial process through which Plaintiff could remedy the alleged deprivation of due process.  Under *McKinney*, we look to whether the state court, if it were asked,

> would provide an adequate remedy for the procedural deprivation the federal court plaintiff claims to have suffered.  If state courts would, then there is no federal procedural due process violation regardless of whether the plaintiff has taken advantage of the state remedy or attempted to do so.

*Horton*, 202 F.3d at 1300 (discussing *McKinney*, 20 F.3d at 1561-65).  Plaintiff has and is availing itself of the remedial process provided by the state.  That is all the process to which Plaintiff is due.  *Kinney*, 20 F.3d at 1562 ("due process is satisfied when the

challenger has an opportunity to present his allegations and to demonstrate the alleged bias.  A demonstration that the decisionmaker was biased, however, is not tantamount to a demonstration that there has been a denial of procedural due process."); *Artistic Entm't*, 134 Fed.Appx. at 310 (rejecting the procedural due process claim of a plaintiff which alleged that it did not receive fair notice of the liquor license revocation hearing and was deprived of a fair and meaningful hearing; the state made adequate process available to the plaintiff to remedy any alleged deprivation).

We find that Plaintiff has not demonstrated a likelihood that it would prevail on the merits of its due process claim.  We therefore recommend that Plaintiff's motion for preliminary injunction be denied.  Given our determination on Plaintiff's likelihood of success on the merits, we need not consider the remaining conditions prerequisite to injunctive relief.  *1-800 Contacts*, 299 F.3d at 1247.

### III.   CONCLUSION

For the foregoing reasons, this Court recommends that Plaintiff Seay Towing, Incorporated's Motion for Preliminary Injunction [**D.E. 3**] be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have ten (10) business days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein.  *R.T.C. v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988);

*Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C.

§ 636(b)(1).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 11th day of

February, 2010.


/s/  *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge